Plaintiff instituted this suit against the defendants, C. J. Ash and his automobile public liability insurer, Hartford Accident and Indemnity Company, for personal injuries, medical expenses and property damage resulting from an automobile-truck collision. The accident occurred on July 7, 1948, at about the hour of 2:30 P.M., and at about six miles North of the then city limits of the City of Baton Rouge, on what is commonly known as the Plank Road, in the Parish of East Baton Rouge, near the residence of plaintiff.
At the situs of the accident, the Plank Road is a paved highway, with an eighteen foot concrete slab and shoulders of about six feet on each side, with shrubbery on the west side about three feet in width; it is also straight and level for at least a distance of one-half mile in either direction. It runs north and south. Plaintiff resides on the west side of the road, with a driveway on the south side of his residence leading from the road to the rear of his lot.
The plaintiff, prior to and at the time of the accident, was driving his 1931 Ford automobile in a northerly direction on his return home from work. Upon approaching his driveway, and while attempting to make a left-hand turn into his driveway, the collision occurred between his automobile and a 1946 Chevrolet pick-up truck, which was owned and being driven by defendant Ash, which pick-up truck was also proceeding in a northerly direction on the said road, and which, at the time of the accident, was in the act of passing the plaintiff's car.
The plaintiff alleges that the sole and proximate cause of the collision and the resulting injuries and damages was the negligence of the defendant Ash, in the following particulars:
"(a) driving and operating his said pick-up truck over the Plank Road, a main thoroughfare, at a high and excessive and illegal rate of speed;
"(b) in attempting to pass around to the left of petitioner at a time when petitioner had signaled that he intended to make a left turn, and attempting to pass the automobile of petitioner after having immediately passed another automobile, and without looking to see that the way was clear for him to make the passage around said automobile of petitioner;
"(c) driving and operating said automobile over and upon said paved highway at a reckless and excessive and illegal rate of speed at a time when said paved highway was wet and slippery from rain;
"(d) failing to keep the proper lookout and to observe that petitioner was intending to make a left-hand turn into his driveway, and that petitioner had signaled to make said turn;
"(e) failing to keep and maintain his said automobile in proper control and in such state of control that he could bring same to a stop and avoid collision with other vehicles within a reasonable distance;
"(f) driving and operating said automobile over and upon said highway in such a reckless, careless and negligent manner and driving same into and against the automobile of petitioner and causing damage to the automobile of petitioner and causing serious personal injuries to petitioner;
"(g) driving and operating said automobile with total disregard of others lawfully upon said highway and without due regard to the laws governing the operation of vehicles upon the highway and without due regard to the laws governing the operation of vehicles upon the highway and without regard to the rules of the road as set forth by the laws of the State of Louisiana;
"(h) failing to bring said automobile under control after admittedly having seen the signal of petitioner."
The defendants, in their answer, denied that the collision and the resulting injuries and damages were caused by the negligence of defendant Ash, and alternatively alleged that the plaintiff was guilty of contributory negligence in the following particulars:
"(a) in making a left turn from the right lane of travel without ascertaining that same could be done safely; *Page 43 
"(b) in failing to indicate or signal his intention to make a left turn from a right lane of traffic when he knew or should have known that traffic from the rear was approaching to pass him;
"(c) in failing to keep a proper look-out; and
"(d) in failing to stay on his right side of the road and allow Ash's automobile to pass him before he, Furr, attempted to make a left turn from his right lane of traffic; and which acts of negligence were a proximate cause of the accident, which acts of negligence were specially pleaded as a defense."
Upon these issues, the case was tried, resulting in a judgment in favor of the defendants, dismissing plaintiff's suit. Plaintiff has appealed.
The trial judge, in his written reasons for judgment, held that even though defendant Ash may have been guilty of acts of negligence which may have been a proximate cause of the accident, yet he found that the plaintiff was likewise guilty of acts of negligence which were a proximate cause of the accident and which barred his recovery.
Since the trial court came to the conclusion that plaintiff was guilty of contributory negligence, it appears to us that we should first discuss and pass on this phase of the case in that should the conclusion be that the plaintiff was guilty of contributory negligence, then we need not go any further. We shall attempt to give a resumé of the testimony relating to the collision, as disclosed by the record.
Mr. J. G. Butler's testimony was taken by deposition. He testified that he was a neighbor of the plaintiff; in fact, he lived immediately south of plaintiff, on the west side of the Road, and that the driveway of plaintiff was the common driveway of himself and plaintiff. He was sitting on his front porch and saw plaintiff approaching on the road for a distance of about a quarter of a mile. Furr was not driving fast; just prior to the collision, Furr "was slowing down to turn in". He explains the collision thusly: "The best I can tell you, Mr. Furr was, I guess, I don't know how far, but I would say 180 feet down the road and he stuck his hand out and started toturn in and some guy came along behind him and bumped intohim." (Italics ours.) Ash came in sight after Furr had started "to turn in", "going at a pretty good speed". At another part of his testimony, he states that Furr "stuck out" his hand when he was about 100 feet from the point of collision and that Furr had his hand "sticking out" and "was turning" at the time of collision. He states that the bumper and front end of Ash's truck struck the left back corner of Furr's car. He places the point of collision at about 75 feet south of the common driveway and places Furr on the west side of the road, "turning" at the time of the collision.
Trooper Duson Hoover testified that he and Trooper Kemp arrived about fifteen minutes after the collision. Furr and Ash were at the scene of the accident. He questioned both drivers. He places the point of impact as being 75 feet south of Furr's driveway and approximately in the center of the Plank Road. Furr's car had gone past the north side of the driveway and partially off of the west side of the highway; Ash's truck was on the south side of the driveway and on the west side of the highway. Furr's car was about 100 feet from point of impact and Ash's truck was about 50 feet from point of impact. The right front of Ash's truck was damaged and the left rear of Furr's auto was damaged. Ash stated that he had passed a car and was going to pass Furr's car when he saw a left turn signal and he could not stop in time to avoid the accident at that time. Ash gave his speed at about 45 miles per hour at the time the danger of accident was first noticed and at about 25 miles per hour at the moment of impact. The pavement was wet and it had been raining. He, the trooper, did not consider Ash's speed as excessive. Furr's speed at the moment of collision was about ten miles per hour.
Plaintiff, in the beginning of his testimony, in regard as to how the collision occurred, states: "I held out my arm, I would say I saw Mr. Ash a hundred yards behind me or more, I would not be exact because you can't tell, and I put my hand out and I thought I had plenty time to make my turn *Page 44 
and I might have just started to make my turn when he hit me, but I would not think I was over four or five inches out of line (over the black center line) if I was at all, he hit meshortly after I put my hand out and knocked me one hundred feet." (Underscoring ours.) He insists that his left front wheel was not over six inches across the black center line and his left rear wheel was in his lane of travel; he was angling in. He states that he was about one hundred yards from his driveway at the time that he gave the left turn signal; that at that time, Ash was about one hundred yards away. He estimates his speed at about ten miles per hour. In answer to the question, "At the time you gave a signal for a left turn and at that time you saw Mr. Ash coming behind you, would you have had time to make a left turn," he answered, "yes". "Q. Why didn't you make it? A. Because he hit me." In answer to the question, "What did you do," he states: "Put out my hand one hundred yards down the road and kept my hand out until I got hit, which I figure was one hundred feet after I put my hand out, and he (Ash) made the turn for me." It is noted at this time that according to this answer, that plaintiff was two hundred feet away from the driveway when the collision took place, and that defendant traveled four hundred feet while plaintiff traveled one hundred feet. On cross-examination, he testified again that he was at least one hundred yards from his driveway when he held out his hand for the left turn, had traveled about one hundred feet and was approximately one hundred feet from his driveway when he was hit; that he held out his hand from the beginning until he was struck. On cross-examination, he was not so positive as to how far Ash was behind him when he held out his hand for his left turn. At one time he states: "I looked through my rear view mirror and he was a pretty good ways back, I would not attempt to tell you in fact, I felt I had plenty time to make the turn." At another time, he places Ash's truck at or crossing a bridge, shown to be about a quarter of a mile from the driveway; yet, at another time in answer to the question that, at the time of holding out his hand, Ash "might have been three hundred feet and might have been six hundred feet," he stated: "That is right." Yet at another time, he states, "I just looked through there and I figured I had plentytime to make my turn and was going ahead and make it." (Underscoring ours.) He is definite, however, that after his initial observation as to the location of the truck, he never looked again. On being asked the question, "Did you ever look through your rear view mirror again," he stated, "No, sir, Idon't think I had time," which clearly indicates to us that when he did look, the truck was much closer than he would want us to believe. (Underscoring ours.) Furthermore, he now states that his car was about fifty feet from his driveway, rather than one hundred feet away when struck. In the latter part of his testimony he states that he had not started to make the left turn when he was hit; however, he admits that he could have been a little to the west of the black center line.
Defendant Ash testified that he was traveling north at about a speed of forty-five miles per hour. He passed a car beyond a bridge some one quarter of a mile south of the point of impact and regained his right lane of travel. After going over the bridge, he saw plaintiff's car also traveling north; when he was seventy-five or one hundred feet behind Furr's car, he gradually pulled his truck towards the left and finally was in his left lane of travel; when he was about eight or ten feet behind plaintiff's car, in the act of passing plaintiff, plaintiff started "easing over and throwed out his hand like that (indicating a left turn)." He immediately applied his brakes and being unable to stop, "skidded into him." He places plaintiff's car's left wheel about six inches or a foot over the black center line on the west side of the highway at the moment of impact. The point of impact was about seventy-five feet south of the south line of the driveway. He testified that he was keeping a proper lookout while approaching Furr's car and was looking up the road and would have seen Furr's signal had he given one prior to the one that he did see. He admitted that he did not sound his horn. *Page 45 
It appears to us that defendant Ash's version of the accident is more plausible. It is somewhat corroborated by the testimony of Mr. Butler, wherein he states that Furr "stuck his hand out and started to turn in," and Ash's truck ran into him. Furthermore, Furr admits that he was hit shortly after he put out his hand. The preponderance of the evidence is that the collision took place slightly west of the black center line. The right front of the truck struck the left rear of the car.
The trial judge in his reasons for judgment states:
"From a resumé of the entire testimony, it is my opinion that if defendant was guilty of negligence, plaintiff was guilty of contributory negligence, which bars his right to recover. Accepting defendant's version of the accident, plaintiff began the execution and signalling for a left turn when defendant was so close to him that plaintiff's maneuver could not be safely made. Accepting plaintiff's version that when he first held his hand out to signal a left turn, defendant was sufficiently far enough behind him to make the turn in safety, it is my opinion that immediately prior to making his left turn he should have ascertained that said turn could have been safely made, (a fact he did not do)."
In concluding his reasons for judgment, the trial judge states:
"It is my opinion that admitting that defendant was negligent in attempting to pass plaintiff without sounding his horn, that plaintiff must be held guilty of contributory negligence in making a left turn into his driveway without first ascertaining that said maneuver could be safely made;" citing many cases. Such is the law under our present jurisprudence.
This is a factual case. There are two conflicting versions as to when plaintiff actually held out his hand as a signal for the left turn. It is apparent from reading the trial judge's reasons for judgment, that he was more impressed by the frank testimony of the defendant than that of the plaintiff, and in that, we must say, that we fully agree with him. We have our serious doubt that plaintiff looked in his rear view mirror. But if he did and did see the defendant approaching him, defendant was much closer than he says that the defendant was, and that plaintiff attempted to beat the defendant to the driveway by trying to angle some one hundred feet to the driveway. It was his duty to wait and see if he could perform such a maneuver safely.
The plaintiff relies and lays great stress on the case of Burgess v. Blackwell, 9 La. App. 729, 120 So. 231, decided by this Court. We do not find any applicability to this case in that there may have been different pleadings in that case. It may be that contributory negligence was not specially pleaded; at least, the opinion does not mention that it was. However, if it was, then we are not in accord with the decision.
Finding no reversible error committed by the trial judge, the judgment appealed from is affirmed.